# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 30, 2003

## JASON BLAKE BRYANT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Greene County**
**No. 01-CR-161     James Edward Beckner, Judge**

---

**No. E2002-00907-CCA-R3-PC**
**March 11, 2004**

---

The petitioner filed a Petition for Post-conviction Relief September 26, 2001. After holding a hearing on the petition, the trial court denied the petition.  The petitioner appealed the trial court's decision. We have reviewed the petitioner's many issues, including allegations of ineffective assistance of counsel and entry of an involuntary guilty plea, and we affirm the trial court's decision to deny the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES, and ROBERT W. WEDEMEYER, JJ., joined.

Paul G. Whetstone, Mosheim, Tennessee, for the appellant, Jason Blake Bryant.

Paul G. Summers, Attorney General & Reporter; Mark A. Fulks, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Eric Christiansen, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

The facts leading up to this Post-Conviction Petition have been recited in several opinions, State v. Howell, 34 S.W.3d 484 (Tenn. Crim. App. 2000), Joseph Lance Risner v. State, No. E2002-01112-CCA-R3-PC, 2003 WL 21492929 (Tenn. Crim. App. at Knoxville, June 30, 2003), Edward Dean Mullins v. State, No. E2002-00730-CCA-R3-PC, 2003 WL 402814 (Tenn. Crim. App. at Knoxville, Feb. 24, 2003), Crystal Rena Sturgill v. State, No. E2002-00385CCA-R3-PC, 2003 WL 239743 (Tenn. Crim. App. at Knoxville, Feb. 4, 2003), and Natasha W. Cornett v. State, No. E2002-

00034-CCA-R3-PC, 2002 WL 31174214 (Tenn. Crim. App. at Knoxville, Sept. 30, 2002). On April 6, 1997, the petitioner and five of his acquaintances were on their way from Pikeville, Kentucky to New Orleans, Louisiana. Before leaving on their trip they acquired a 9mm pistol and a .25 caliber pistol. They soon realized that their car would not be able to make the drive from Pikeville to New Orleans and discussed stealing a car from a parking lot or a dealership. They then met up with Vidar Lillelid and his family, consisting of his wife Delfina, six-year-old daughter, Tabitha and two-year-old son, Peter, at a rest stop in Greene County, Tennessee. The Lillelid's were Jehovah's Witnesses, and Mr. Lillelid approached two of the group to discuss his religious views. At some point, one of the men in the group, Joseph Risner, pulled out a gun and forced the Lillelid family into their van.

Mr. Lillelid drove the van with Mr. Risner in the passenger seat and the rest of the group followed in the car. Mr. Risner directed Mr. Lillelid to a secluded road at the next exit. The Lillelids were then ordered out of the van, lined up in front of a ditch, and shot. This shooting ended in the deaths of the mother, the father and the daughter and serious injury to the son. The identity of the shooter is disputed by the participants, but the other facts of the shooting are not. The group then decided to drive to Mexico, where they were eventually apprehended in the Lillelid's van. After being returned to Tennessee, the State filed charges and provided notice that the death penalty would be sought for four of the participants, with the exception of the petitioner and another participant, who were juveniles at the time of the crime. All the participants entered pleas of guilty to three counts of first degree murder and one count of attempted first degree murder.

The trial court conducted a sentencing hearing in February of 1998. At the conclusion of the sentencing hearing, the trial court sentenced all six of the participants to twenty-five years for the attempted murder and life without parole for each murder conviction. The trial court ordered all four sentences to be served consecutively. All six participants appealed their sentences. State v. Howell, 34 S.W.3d 484 (Tenn. Crim. App. 2000). This Court affirmed all the sentences except that of Crystal Sturgill. Id. at 515. Our supreme court denied permission to appeal on September 25, 2000.

The petitioner mailed a Petition for Post-Conviction Relief on September 23, 2001. This Petition was filed with the trial court on September 26, 2001. Under Rule 28 § 2(G) of the Rules of the Tennessee Supreme Court, if a paper is delivered to the appropriate individual in a detention facility for mailing by the date required for filing, such document will be considered timely filed.

The trial court held a hearing on the petitioner's post-conviction petition. After hearing the testimony of many witnesses, the trial court dismissed the post-conviction petition. The petitioner appeals this dismissal.

Standard of Review

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review

of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this court is bound by the court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

The Petitioner brings several arguments to this Court in his appeal from the trial court's denial of his Petition for Post-Conviction Relief. We will first address Petitioner's claims that he was denied effective assistance of counsel, then his claims that he did not enter his plea knowingly, intelligently and voluntarily, and finally his myriad other issues.

## Effective Assistance of Counsel

The Petitioner argues that he was denied effective assistance of counsel both at trial and on appeal. When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. Burns, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those

decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

## Ineffective Assistance of Counsel at Trial

The petitioner argues that his trial counsel was ineffective at trial because trial counsel: (1) failed to challenge his transfer from juvenile court with evidence of his history of mental health problems; (2) failed to request an acceptance hearing in circuit court after he was transferred; (3) failed to investigate his social history; (4) hired an unqualified mental health expert; (5) failed to successfully pursue a severance; (6) failed to develop a theory of defense; (7) erroneously advised him to accept the plea offer; (8) erroneously allowed him to be sentenced by the trial court rather than a jury; and (9) failed to develop a mitigation strategy.

### A. Transfer from Juvenile Court

The petitioner first argues that his trial counsel was ineffective because he did not prevent the transfer of the petitioner to the criminal court. Because the petitioner was a juvenile when he was originally detained by Tennessee authorities, he had a juvenile detention hearing after being brought to Tennessee from Arizona. His trial counsel filed a motion contesting his transfer to the criminal court. The juvenile court denied this motion. On July 28, 1997, the juvenile court entered an order transferring the petitioner to the criminal court.

The petitioner's trial counsel testified at the post-conviction hearing. With regard to the transfer from juvenile court, trial counsel stated that his strategy throughout the proceedings was to establish that the petitioner was not the shooter, contrary to the contention of the other five defendants. Therefore, he opposed an extensive mental evaluation because he did not want the petitioner available to the State's psychiatrists. He was afraid that due to petitioner's mental history that the State would prove he was a "compulsive psycho-path" and hurt his defense. Therefore, he spoke with Dr. Thomas Schacht, who found the petitioner competent to stand trial, knew the difference between right and wrong, and could assist in the preparation of his defense. In addition, a Dr. Don Larkin, who was appointed to evaluate the petitioner by the juvenile court, also stated that the petitioner was not mentally retarded, mentally ill, or committable.

The petitioner's trial counsel testified that he did not believe there was anything he could do to prevent the petitioner's transfer to criminal court. He filed a motion contesting the transfer, but that motion was denied. He also testified that he believed he had in criminal court filed for an acceptance hearing.

At the post-conviction hearing, the petitioner presented evidence to support his petition. As to the juvenile proceedings, the petitioner presented the testimony of a Dr. Bruce Seidner. Dr. Seidner testified that he believed Dr. Schacht's evaluation was brief, but was unable to evaluate the

assessment because of the lack of information. The petitioner offered no proof that trial counsel did not file for an acceptance hearing.

The petitioner argues that Dr. Schacht and Assessment Services, who were hired by the petitioner's trial counsel, conducted an inadequate forensic evaluation, that trial counsel was ineffective because he failed to focus on the petitioner's mental health issues while he was in the juvenile court and that his trial counsel failed to request an acceptance hearing.

As stated above, to be successful on a petition for post-conviction relief a petitioner must show that the trial counsel was deficient and that this deficiency was prejudicial. See Powers, 942 S.W.2d at 558. The petitioner has not shown that his trial counsel's services were deficient with regard to the juvenile court proceedings. Part of the trial counsel's strategy was to prevent the appearance that the petitioner was a psychopath by not delving into his mental health history. Therefore, the trial counsel did not want an extensive mental evaluation prepared for this phase of the petitioner's prosecution. This is a reasonable strategy, and we cannot second-guess a reasonably-based trial strategy. Adkins, 911 S.W.2d at 347.

In addition, trial counsel did all he could to prevent the transfer to the criminal court. He presented an argument to the court, he filed a motion contesting the transfer, and he filed for an acceptance hearing. The juvenile court held that the petitioner should be transferred to the juvenile court.

The petitioner did not show at the post-conviction hearing that trial counsel's representation in this regard was deficient. Therefore, we agree with the trial court's assessment that trial counsel provided effective assistance to the petitioner.

B. Failed to Investigate His Social History

The petitioner also argues that trial counsel was ineffective because he failed to investigate the petitioner's social history. Trial counsel testified at the post-conviction hearing that he hired an investigator and mitigation specialist, Chris Brown, to investigate the petitioner's background. She developed a social history and prepared a mitigation report. Trial counsel also stated he visited the petitioner's hometown and personally reviewed the evidence. The petitioner presented his mother, his sister his uncle and his aunt as witnesses at the post-conviction hearing. They all testified that they never met the investigator hired by trial counsel. But, his mother and sister testified that they, and the petitioner's now deceased father, met with trial counsel himself.

The petitioner's only evidence to prove that trial counsel offered ineffective assistance of counsel was the testimony of the petitioner's family. The testimony by these family members was to the effect that trial counsel met with the family in Kentucky and that no one interviewed the petitioner's aunt and uncle. There are many other sources of investigation of a defendant's social

history, such as criminal records, school records, and any medical treatment records. In addition, there was additional social history taken by Dr. Robert Granacher, the psychiatrist hired by trial counsel to prepare for trial.

The trial court found that trial counsel had performed a sufficient investigation of petitioner's background. We agree with the trial court's conclusion. The petitioner has not proven that the trial counsel's investigation of his social history was deficient. Even if one did conclude that the investigation of his social history was deficient, there is no proof that the outcome would have been different. It is doubtful that the information provided by the petitioner's family members would carry more weight than a psychiatric evaluation, the petitioner's previous criminal record, and his history of treatment in a mental health facility. Therefore, we hold that the trial court's determination that trial counsel's representation was sufficient in regard to this issue is correct.

### C. Failed to Hire a Qualified Mental Health Expert

The petitioner also argues that trial counsel was ineffective in his selection of Dr. Granacher and that Dr. Granacher performed an incompetent forensic evaluation. The petitioner's trial counsel testified at the hearing that another attorney recommended Dr. Granacher to him. He also testified that Dr. Granacher concluded that the petitioner was a follower instead of a leader. This conclusion supported the trial counsel's theory that the petitioner was not a leader or shooter in the offense.

Dr. Seidner testified that Dr. Granacher's evaluation was missing several tests and information that he considered pertinent. He stated, "Dr. Granacher is clearly an experienced forensic psychiatrist, . . . . However, this was clearly a rushed evaluation." He relied upon Dr. Granacher's report, notes from testing and his testimony at the hearing. However, Dr. Seidner also testified that he did not know that Dr. Granacher's testimony, which he evaluated, was from a sentencing hearing, and he did not realize that the purpose of the hearing was to introduce favorable information to influence the court's sentencing. After learning this information on cross-examination, Dr. Seidner agreed that Dr. Granacher's testimony presented factors to mitigate the petitioner's sentence. Dr. Seidner then stated that because he did not understand the fact pattern, and the intent of Dr. Granacher's testimony, his criticism would have been unfair.

The petitioner has not shown that his trial counsel acted ineffectively in hiring Dr. Granacher. As stated above, even Dr. Seidner, testifying on behalf of the petitioner at the post-conviction hearing, stated that his criticism of Dr. Granacher was unfair when he discovered the context of Granacher's testimony. For this reason, the trial court was correct in concluding that the hiring of Dr. Granacher is not a basis for an ineffective assistance of counsel claim.

## D. Failed to Successfully Pursue a Severance

The petitioner also argues that his trial counsel acted ineffectively in arguing the motion to sever. His trial counsel testified at the hearing that he filed a motion to sever and made a fundamental fairness argument. He stated that it was unfair to try a juvenile jointly with an adult.

In its denial of post-conviction relief, the trial court stated, "[Trial counsel] had done everything he could to get a severance of petitioner from the other defendants. The trial court had denied the severance and was affirmed on interlocutory appeal." The petitioner's trial counsel filed the motion and argued it. The trial court denied it, and the appellate court agreed with this decision. Clearly, the trial counsel did all he could do and was not deficient in his representation as to this issue.

## E. Theory of Defense

The petitioner argues that his trial counsel did not develop an adequate theory of defense. The petitioner's trial counsel testified at the hearing that he did develop a trial strategy. His main strategy was to prove that the petitioner was not "the shooter." He attempted to show that the petitioner was the youngest member of the group and easily persuaded due to his young age, extensive drug and alcohol abuse, as well as, his psychological history. It is quite evident that the petitioner's trial counsel had indeed developed a theory of defense.

The petitioner's counsel suggested a different trial strategy based upon a "pentagram" model with the petitioner being outside the five-pointed star because he was the outsider. The trial court held in its order that the trial counsel effectively developed a theory of defense. We agree with this assessment. Even if we did not agree, we could not hold that petitioner's trial counsel was ineffective based on this issue. "[I]t cannot be said that incompetent representation has occurred merely because other lawyers, judging from hindsight, could have made a better choice of tactics." Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The petitioner has not presented any other evidence that the defense was not adequate. Therefore, the petitioner has not met the requirements to be granted post-conviction relief on this issue.

## F. Erroneously Advised Him to Accept the Guilty Plea Offer

The petitioner argues that his trial counsel was ineffective in allowing the petitioner to enter into a patently unfair guilty plea agreement. He states that the two reasons the petitioner pled guilty was because he was saving his four co-defendants from the death penalty, and he was told that his parents sanctioned the agreement. He testified at the hearing that his trial counsel told him that his co-defendants would be spared the death penalty if he agreed to plead guilty. He testified that he was particularly concerned about Natasha Cornett getting the death penalty if she went to trial.

At the allocution, the trial judge asked the petitioner if he was able to read and understand the waiver of rights and the plea of guilty that he signed without any difficulty. The petitioner states that his trial counsel interjected that he had read the plea to the petitioner in full. The petitioner argues that this cut off any chance the petitioner had to voice his state of mind at the time. The petitioner also attacks his trial counsel's testimony at the post-conviction hearing that the petitioner understood the issues connected to his waiver of rights.

At the post-conviction hearing, the trial counsel also testified to several other facts. He stated that he did discuss the plea offer and the prospects for trial with the petitioner. He advised the petitioner that the evidence against him was sufficient for a conviction and that he would likely be sentenced to life without parole by a jury. He believed, and told the petitioner so, that his best chance for a life sentence was in front of a trial judge who had seen other aspects of terrible and gruesome factual scenarios. Therefore, he believed the offer, while not attractive, was the best chance because a jury would not be sympathetic under the circumstances.

The petitioner also argues that his trial counsel was ineffective because he did not obtain his family's approval of the petitioner's plea and that the petitioner's family was not invited to the allocution and plea. Members of the petitioner's family testified that they were not consulted about the offer and were not invited to attend the guilty plea hearing. However, the petitioner's trial counsel testified that the petitioner's family was involved in the plea offer decision and agreed with the decision to accept the offer. He also stated that they were invited to attend the guilty plea hearing.

In its order denying post-conviction relief, the trial court found no support for relief based upon these issues. The trial court stated, "trial counsel was effective in his dealings with the parents of petitioner during the plea negotiations and the plea itself. Further, the defense counsel met the standards for effective assistance of counsel in allowing the plea to be entered. The plea was not unfair and was not skewed . . . ." Furthermore, we are unaware of any case law holding that a plea of guilty is involuntary because it is motivated out of friendship and concern for others.

We agree with the assessment of the trial court. None of the evidence presented by the petitioner shows that his trial counsel's services were deficient with regard to the guilty plea. In addition, we note that the trial court obviously credited the testimony of the trial counsel as opposed to that of the petitioner's family members. We are unable to revisit credibility on appeal, therefore, we must defer to the decision of the trial court in that regard. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). For these reasons, the petitioner is not entitled to relief on these grounds.

G. Erroneously Allowed Him to be Sentenced by the Trial Court

The petitioner next argues that his trial counsel was ineffective at the sentencing hearing. He argues that his trial counsel was ineffective for allowing the trial judge to conduct the petitioner's sentencing in light of his harsh sentencing history, for failing to develop a social history of the petitioner and for omitting key exculpatory information known to the petitioner's trial counsel.

The petitioner's trial counsel testified at the post-conviction hearing that he believed the petitioner's only chance for a life sentence was to be sentenced by the trial judge. He believed that a jury would be less sympathetic than a trial judge who was used to seeing the evidence for murder cases. The trial court concluded at the hearing that the trial counsel's representation was effective.

We agree with the trial court. We hereinafter hold that the trial counsel's assistance was not deficient with regard to the guilty plea. The requirement that the petitioner be sentenced by the trial court was part of the guilty plea which we have already found was knowing and voluntary. In addition, allowing the trial court, instead of a jury, to sentence the petitioner could be considered part of trial counsel's strategy. We are not able to second-guess trial counsel's strategy in this regard. See Adkins, 911 S.W.2d at 347. For this reason, we affirm the conclusion of the trial court.

### H. Failed to Include Key Exculpatory Evidence at Sentencing Hearing

The petitioner also argues that his trial counsel was ineffective because he did not develop a mitigation strategy for the sentencing hearing. The petitioner argues specifically that his trial counsel failed to call a witness, Dawn Miller, at the sentencing hearing and that the testimony of Dr. Granacher was ineffective because it did not include the petitioner's adolescent history, lifestyle and problems.

At the post-conviction hearing, trial counsel testified that he remembered taking a statement from a Dawn Miller at the Greene County Jail. Dawn Miller told trial counsel that while she was in jail, she spoke with Crystal Sturgill who told her that the petitioner was not the shooter and that she had looked at Dean Mullins and made a sign like a gun with her finger and asked if petitioner had shot the victims, and Mr. Mullins shook his head no and pointed to Joe Risner's cell. The petitioner's trial counsel stated that he did not believe Ms. Miller's statement was sufficient to counteract the petitioner's confession to authorities in Arizona and the statements of the other five defendants that he had been the shooter. He did not believe this statement was enough to receive a reduced sentence.

The petitioner did not present Ms. Miller as a witness at the post-conviction hearing.

> When a petitioner contends that trial counsel failed to discover, interview, or present witnesses . . . these witnesses should be presented by the petitioner at the evidentiary hearing. As a general rule, this is the only way the petitioner can establish that . . . (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.

Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The petitioner failed to present Ms. Miller as a witness at the post-conviction hearing. Therefore, he cannot be successful on this issue.

We cannot guess to what the witness would have actually testified nor how effective that testimony may have been in altering the outcome of the sentencing hearing without her testimony at the post-conviction hearing. Therefore, we cannot find that trial counsel was ineffective in not presenting this witness.

We have addressed trial counsel's effectiveness with regard to the presentation at the sentencing hearing of Dr. Granacher's testimony and the petitioner's social history. We have already concluded that the presentation of Dr. Granacher's testimony was based on trial strategy, and we are not in a position to second-guess trial counsel's trial strategy. Therefore, the petitioner cannot be successful on this issue.

For the reasons stated above, the petitioner has not successfully shown that the record preponderates against the trial court's finding that the petitioner was afforded the effective assistance of counsel. This issue is without merit.

### Ineffective Assistance of Counsel on Appeal

The petitioner argues that his trial counsel was ineffective on appeal because: (1) trial counsel improperly advanced and chose the wrong reasoning for the Rule 10 Appeal from the trial court's denial of the Motion to Sever; (2) trial counsel failed to appeal to the Tennessee Supreme Court when this Court refused to reverse the trial court's denial of the Motion to Sever; (3) trial counsel failed to respond to a Showcause Order from this Court, which could have ensured that the petitioner's appeal could have been considered independently of his co-defendants; and (4) trial counsel's brief to this Court did not adequately advance the merits of the petitioner's appeal from his sentence.

We employ the same two-prong standard that is used in considering claims of ineffective assistance of trial counsel to evaluate allegations of ineffective assistance of appellate counsel. See, e.g. Porterfield v. State, 897 S.W.2d 672, 677-78 (Tenn. 1985). Typically, a decision regarding which issues should be raised on appeal is one that is left to the professional judgment and sound discretion of appellate counsel. Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993); Porterfield, 897 S.W.2d at 678.

The State argues that the issues in regard to ineffective assistance of appellate counsel should be waived because the petitioner failed to make arguments, cite authority, or cite to the record to support these issues. While the State is correct with regard to some or all of these issues, we choose to address on the merits whether trial counsel acted effectively on appeal.

### A. Rule 10 Appeal

The petitioner argues several reasons as to why his trial counsel was ineffective on appeal. He first argues that his trial counsel was ineffective because he did not argue in his Rule 10 Appeal after the trial court denied the Motion to Sever that there would be an inequity in position between

the juvenile defendants and other defendants if plea negotiations were to ensue. He states that if this court had been presented with this issue then the problems with the guilty plea could have been addressed before the damage was inflicted. The petitioner also argues that trial counsel was ineffective for not seeking permission to appeal to our supreme court from this Court's affirmance of the trial court's denial of the motion to sever.

Both of these issues deal with tactical decisions of appellate counsel. As stated above, a decision regarding which issues should be raised on appeal is one that is left to the professional judgment and sound discretion of appellate counsel. Porterfield, 897 S.W.2d at 678. We will defer to counsel's tactical and strategic choices where those choices are informed ones predicated upon adequate preparation. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Hellard, 629 S.W.2d at 9. The trial court's denial of the motion to sever was affirmed on appeal by this Court.

The petitioner makes no argument that trial counsel made uninformed choices or was inadequately prepared. He only argues that this one issue should have been included. This was a tactical decision by trial counsel on appeal. We conclude that trial counsel's services were not deficient with regard to these issues, and these issues are without merit.

## B. Direct Appeal

Trial counsel did not appeal any issues other than sentencing after the petitioner's plea. Trial counsel was not ineffective, because any issues other then the petitioner's sentence were not ripe for appeal. As a general rule, a defendant who pleads guilty to a criminal offense waives the right to appeal from all prior non-jurisdictional, procedural, and constitutional defects in the proceedings. State v. McKissack, 917 S.W.2d 714, 716 (Tenn. Crim. App. 1995). However, a defendant who enters a plea of guilty and agrees to be sentenced by the trial court does not waive the right to appeal the sentence imposed. State v. Carter, 986 S.W.2d 596, 597 (Tenn. Crim. App. 1998).

Therefore, this issue is without merit.

## C. Trial Counsel's Brief

The petitioner also argues that trial counsel was ineffective on appeal because trial counsel's brief in this Court did not adequately advance the merits of the petitioner's appeal of the sentence. The petitioner has attached a copy of the brief as an appendix to his post-conviction appeal brief. However, attaching an appendix does not make a document part of the record on appeal. Tenn. R. App. P. 24.

In any event, any decision regarding which issues should be raised on appeal is one that is left to the professional judgment and sound discretion of appellate counsel. Porterfield, 897 S.W.2d at 678. We will defer to counsel's tactical and strategic choices where those choices are informed ones predicated upon adequate preparation. Goad, 938 S.W.2d at 369; Hellard, 629 S.W.2d at 9.

There is no argument by the petitioner that his counsel was inadequately prepared or his choices uninformed. We have no reason to believe that trial counsel's appellate representation was deficient.

This issue is without merit.

D. Showcause Order

The petitioner's final argument with regard to ineffective assistance of counsel on appeal is that trial counsel failed to respond to a Showcause Order entered by this Court. The petitioner argues that answering this Showcause Order would have allowed the petitioner's direct appeal from sentencing to be considered separately. This Showcause Order directed the co-defendants' attorneys to showcause as to why their appeals should not be consolidated. Trial counsel testified at the hearing that he did not remember whether he answered the showcause order or not, but he did remember several conference calls concerning the state of the record on appeal. We conclude that the decision to join in a consolidated appeal is a tactical decision. As stated above, absent evidence that there was an uninformed decision or inadequate preparation, there is no basis to second-guess appellate counsel's strategy. Therefore, there is no evidence that trial counsel rendered deficient services.

This issue is without merit.

**Voluntariness of Guilty Plea**

The petitioner also argues that his guilty plea was not entered into knowingly, intelligently and voluntarily and that his guilty plea violated his due process rights. He complains that his due process rights were violated when the trial court refused to sever the juvenile defendants from the adult defendants, by the "all or nothing" plea offer made by the district attorney, which created fatal impediments to a knowing, intelligent and voluntary guilty plea, the petitioner's plea was not knowing, intelligent and voluntary, and the en masse allocution was deficient and violated the petitioner's due process rights.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 191 S.W.2d 346, 353 (Tenn. Crim. App. 1995); see also Chamberlain v. State, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Specifically, a reviewing court must consider "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to

-12-

plead guilty, including a desire to avoid a greater penalty that might result from a jury trial." Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

## A. Severance and Package Deal

The petitioner argues that he could not "freely and voluntarily enter into plea negotiations while knowing that a decision to go to trial could result in four new inductees into Tennessee's death row." This is the argument he makes with regard to the severance and the package deal. He states that when he was offered the plea agreement he was concerned about one of the defendants in particular, Natasha Cornett, with whom he had had sexual contact. He argues that he had no choice but to join the plea agreement because otherwise the other defendants would "die at the hands of the State."

Package deal pleas have been held to be acceptable plea bargaining practice in Tennessee. See, e.g., Netters v. State, 957 S.W.2d 844 (Tenn. Crim. App. 1997); Parham v. State, 885 S.W.2d 375 (Tenn. Crim. App. 1994); State v. Street, 768 S.W.2d 703 (Tenn. Crim. App. 1988); Hodges v. State, 491 S.W.2d 624 (Tenn. Crim. App. 1972). In addition, we have already held that the package deal plea entered into by this group of defendants did not violate various defendants' rights. Joseph Lance Risner v. State, No. E2002-01112-CCA-R3-PC, 2003 WL 21492929, at * 7-9 (Tenn. Crim. App. at Knoxville, June 30, 2003); Natasha W. Cornett v. State, No. E2002-00034-CCA-R3-PC, 2002 WL 31174214, at * 6 (Tenn. Crim. App. at Knoxville, Sept. 30, 2002); Crystal Rena Sturgill v. State, No. E2002-00385-CCA-R3-PC, 2003 WL 239743, at * 4 (Tenn. Crim. App. at Knoxville, Feb. 4, 2003). In Crystal Rena Sturgill, we were faced with a similar situation where she was concerned about one defendant in particular. In Crystal Rena Sturgill we stated:

> Plea offers by the state may legitimately require that all codefendants agree before the offer is extended to any defendant, and such a contingency does not equate with a coerced guilty plea. See, e.g., Parham v. State, 885 S.W.2d 375 (Tenn. Crim. App. 1994). In this respect, the fact that the petitioner's concern for Dean Mullins played a part in her decision to plead guilty does not negate the validity of her plea. Many factors other than the facts may legitimately influence a decision to plead guilty, such as, reduction of stress on a defendant and his or her family, the removal of certain consequences, and reduction of actual exposure. See McMann v. Richardson, 397 U.S. 759, 768-69, 90 S.Ct. 1441, 1447, 25 L.Ed.2d 763 (1970).

Crystal Rena Sturgill, 2003 WL 239743 at * 4.

As in Crystal Rena Sturgill, the petitioner's concern for Natasha Cornett and the other defendants does not negate the validity of his plea. Although the petitioner was not eligible for the death penalty, his decision to plea could have led to the lesser sentence of life with parole as opposed to life without parole. It can be rightly assumed that he would not have received much sympathy

from a jury and most likely would have been sentenced to life without parole at the hands of a jury. His chances were much greater of receiving the lesser sentence from the trial court instead of a jury.

We conclude that the trial court's denial of the petitioner's motion to sever and the "package deal" nature of the guilty plea did not affect the knowing, voluntary and intelligent entry of the petitioner's guilty plea.

### B. En Masse Allocution

The petitioner also argues that the trial court's en masse allocution at the guilty plea hearing deprived him due process. We have already held in Joseph Lance Reisner v. State, No. E2002-01112-CCA-R3-PC, 2003 WL 21492929 (Tenn. Crim. App. At Knoxville, Mar. 18, 2003), perm. app. denied, (Tenn. Oct. 27 2003), that the en masse allocution in the case of these five co-defendants was insufficient and did not meet the requirements of Boykin or State v. Neal, 810 S.W.2d 131 (Tenn. 1991), because "[t]he trial court did not receive individual, identified responses to each question," asked by the trial court. Reisner, 2003 WL 21492929 at *9.

Having already determined that the guilty plea allocution was insufficient, we must now decide whether this deficiency was harmless error and the plea was entered into voluntarily, knowingly and intelligently. Reisner, 2003 WL 21492929 at *9 (citing Neal, 810 S.W.2d at 138.).

We find sufficient evidence to show that the petitioner entered into his guilty plea knowingly, intelligently and voluntarily. We initially point out that the petitioner's allocution included an important exchange with the trial court that the other co-defendants did not have. At the allocution, he was questioned separately concerning his ability to read and write at the time. The following exchange occurred:

> THE COURT: Are you able to read and write?
> MR. BRYANT: Yes.
> THE COURT: Without any difficulty?
> MR. BRYANT: I've got difficulties.
> THE COURT: Okay, were you able to read and understand this waiver
> of rights and plea of guilty that you've signed without any difficulty?
> [TRIAL COUNSEL]: I read it . . . I read it in full to him, Your Honor.
> THE COURT: You read it verbatim to him, [Trial counsel].
> [TRIAL COUNSEL]: Word for word.
> THE COURT: And did you understand it, Mr. Bryant?
> MR. BRYANT: Yes, sir.
> THE COURT: Have any questions about it?
> MR. BRYANT: No, sir.

It is clear from the petitioner's exchange with the trial court that he understood the guilty plea. Although many of the constitutional questions were asked of the co-defendants as a group, the trial court addressed the petitioner individually and asked if he understood the guilty plea. The trial court did not do this with any of the other co-defendants.

In addition to stating individually in open court that he understood the waiver of rights and the plea of guilty, we must look to the other requirements for a valid guilty plea. As stated above, a reviewing court must consider "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial," when determining whether a plea was entered into knowingly, intelligently and voluntarily. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

The petitioner had a seventh-grade education at the time of the guilty plea hearing. He has since completed his G.E.D. while in prison. His I.Q. is somewhat below average, but he has proven himself capable of completing the schoolwork necessary to complete a high school education. Although he had two juvenile offenses in Kentucky, prior to the circumstances of this case, his familiarity with the criminal justice system could only be described as limited.

However, he did have the benefit of competent counsel. Trial counsel had been practicing for twenty-five (25) years at the time of the post-conviction hearing. He was qualified to handle death penalty cases under applicable state supreme court rules and at the time of his representation of the petitioner, he had tried several death penalty cases. Trial counsel testified extensively as to how he went over the plea offer with the petitioner and his parents and that he explained the plea bargain and its consequences at that time. He stated that the petitioner had no questions about the plea offer at that time. Trial counsel also testified that the petitioner stated that he wanted to plead guilty so that no one else had to die. Trial counsel did not believe that this statement was an overriding concern so that it would render his plea involuntary or less than knowingly and intelligently entered. As noted earlier we are unaware of any law that requires guilty plea to be set aside because it was entered by the defendant out of concern for his friends' well-being.

With regard to the petitioner's guilty plea, the trial court found the following facts at the conclusion of the post-conviction hearing:

Attorney Jessee fully and completely explained the offer, the mechanics of a plea and all the possible consequences that could result therefrom. Petitioner understood that among other things, he would be pleading guilty to three (3) counts of first degree murder and that, although it was hoped he would get concurrent life sentences with parole eligibility in fifty one (51) years, he could receive life without parole sentences.

-15-

Petitioner fully understood he would be waiving a jury trial and that he would be waiving all pretrial issues.

Petitioner expressed a concern for the other defendants but said he wanted to take the offer and plead guilty.

The assertion is made that force was used against co-defendants to get petitioner to plead guilty but nothing was ever introduced to prove what that meant or the effect of it.

Jessee would not have allowed petitioner to plead guilty if there was any indication he did not have the capacity or if Jessee thought petitioner did not understand fully what he was doing.

Petitioner's parents were present when the plea discussions between Jessee and petitioner took place at the Greene County Detention Center. Petitioner expressed no reservations about the plea and neither did his parents.

Petitioner had been held to be tried as an adult and the signature of the parents were not required on plea acceptance papers.

The transcript of the allocution at the guilty plea shows every possible right and consequence of the plea was explained in great detail by the trial court. And was explained in language that could be understood by petitioner.

Petitioner says he tuned out after about the third question and just answered whatever the other defendants did. Yet he says he "lied" in his answers.

The allocution belies those assertions. Petitioner was addressed individually in key issues and made appropriate answers. He responded differently than other defendants when asked about his ability to read and write. He was addressed individually and answered that he was pleading guilty because he was guilty.

Petitioner's testimony at the sentencing hearing and at this hearing demonstates that he had the ability to understand and to be articulate. Except when esoteric language is used with him he demonstrates a comfortable ability to communicate. Even though his over all I.Q. has been measured at 85, he has earned a G.E.D. while incarcerated.

The petitioner never questioned his plea or asked to withdraw it during the more than two (2) week interval between the plea and the sentencing hearing. No one in petitioner's behalf ever presented an objection to the trial court concerning the plea.


We conclude that these facts meet the requirements set out in Blankenship to meet the requirements set out in Boykin. Therefore, we find that the petitioner entered into his plea voluntarily, knowingly and intelligently, and the deficiencies of the en masse allocution were harmless error.

**Apprendi**

The petitioner also argues that the charging instrument was defective and violative of due process under the reasoning set forth in Jones v. United States, 526 U.S. 227 (1999) and Apprendi v. New Jersey, 530 U.S. 466 (2000). He specifically states in his brief that "[b]ecause the aggravating circumstances used to enhance the Petitioner's sentence were not inventoried in the charging instruments, the indictments are fatally flawed, and constitutionally infirm."

Generally, Apprendi requires that any aggravating factors used to increase a defendant's sentence be alleged in the indictment. Apprendi, 530 U.S. at 476. Two years after Apprendi, the Supreme Court decided Ring v. Arizona, 536 U.S. 584 (2002). In Ring, the Supreme Court held that Arizona's capital sentencing scheme was unconstitutional because a judge, sitting without a jury, was required "to find aggravating circumstances necessary for imposition of the death penalty." Id. at 609. The Supreme Court based this decision on its prior decision in Apprendi. In its application of Apprendi in Ring, the Supreme Court found that the application of the aggravating circumstances to capital sentencing in Arizona were the functional equivalent of an element of a greater offense. Ring, 536 U.S. at 609.

Our supreme court stated in State v. Dellinger, 79 S.W.3d 458 (Tenn. 2002), that Apprendi does not apply to the Tennessee capital sentencing scheme. 79 S.W.3d at 466-67. This Court has stated on more than one occasion that Ring does not affect the supreme court's decision. See e.g., State v. Robert Faulkner, No. W2001-02614-CCA-R3-DD, 2003 WL 22220341, at *29 (Tenn. Crim. App. at Jackson, Sept. 26, 2003); State v. Gdongalay P. Berry, No. M2001-02023-CCA-R3-DD, 2003 WL 1855099, at *5 (Tenn. Crim. App. at Nashville, Apr. 10, 2003); State v. Richard Odom, No. W2000-02301-CCA-R3-DD, 2002 WL 31322532, at *13 n.1 (Tenn. Crim. App. at Jackson, Oct. 15, 2002). These cases from our Court rely on Footnote 6 from the Ring opinion which states, "[o]f the 38 States with capital punishment, 29 generally commit sentencing decisions to juries. See . . . Tenn. Code Ann. § 39-13-204." Ring, 536 U.S. at 608, n.6. As we have previously stated, because sentencing decisions in capital cases are submitted to the jury instead of decided by a trial judge the Supreme Court's decision in Ring does not affect the Tennessee Supreme Court's holding in Dellinger. Robert Faulkner, 2003 WL 22220341 at *29; Gdongalay P. Berry, 2003 WL 1855099 at *5; Richard Odom, 2002 WL 31322532 at *13 n.1.

In Dellinger, our supreme court held that principles announced in Apprendi do not apply to our capital sentencing scheme. 79 S.W.3d at 467. The supreme court stated the following reasons why Apprendi does not apply to the Tennessee capital sentencing scheme:

1.     The specific aggravating factor used to impose the death penalty in this case was a prior conviction. The Apprendi holding applies to enhancement factors other than prior convictions. [Apprendi, 530 U.S.]at 476, 120 S. Ct. 2348. The aggravator relied upon by the State here is therefore specifically excluded under Apprendi.
2.     The death penalty is within the statutory range of punishment prescribed by the legislature for first degree murder. Tenn. Code Ann. § 39-13-202(c)(1). The

-17-

*Apprendi* holding applies only to enhancement factors used to impose a sentence above the statutory maximum. *Apprendi*, 530 U.S. at 481, 120 S.Ct. 2348. It is on this basis that the Court in *Apprendi* addressed and rejected the concern that the principles governing its decision would invalidate state capital sentencing procedures requiring judges to find aggravating factors before imposing the death penalty. *Id.* at 496-97, 120 S.Ct. 2348. The Court noted that such a sentencing procedure does not allow a judge to determine the existence of a factor making the crime a capital offense. *Id.* at 497, 120 S.Ct. 2348. Instead, the judge is called upon to decide whether the death penalty, the maximum penalty allowable under the capital statute, should be imposed. *Id.*

3. District attorneys in Tennessee are required to notify capital defendants no less than thirty days before trial of the intent to seek the death penalty and must specify the aggravating circumstances upon which the State intends to rely during sentencing. Tenn. R. Crim. P. 12.3(b). Rule 12.3(b) therefore satisfies the requirements of due process and notice. See *State v. Golphin*, 352 N.C. 364, 395-97, 533 S.E.2d 168 (2000) (statute setting forth the aggravating circumstances the jury may consider provides sufficient notice to satisfy the constitutional requirements of due process).

4. Tennessee's capital sentencing procedure requires that a jury make findings regarding the statutory aggravating circumstances. Tenn. Code Ann. § 39-13-204(f)(1), (I). The *Apprendi* holding applies only to sentencing procedures under which judges sentence the defendants. *Apprendi*, 530 U.S. at 476, 120 S. Ct. 2348.

5. Tennessee's capital sentencing procedure requires that the jury find any statutory aggravating circumstance beyond a reasonable doubt. Tenn. Code Ann. § 39-13-204(f)(1), (I). The Tennessee statutes therefore comply with the "beyond a reasonable doubt" standard required by *Apprendi*. *Apprendi*, 530 U.S. at 476, 120 S. Ct. 2348.

*Dellinger*, 79 S.W.3d at 466-67.

As stated above, our supreme court has held that *Apprendi* is not applicable to capital sentencing cases in Tennessee. It has also been decided that the United States Supreme Court's decision in *Ring* does not affect this conclusion. Therefore, the petitioner's argument that his indictment is unconstitutional under *Apprendi* must fail. In addition, we point out that the petitioner pled guilty and as part of his plea agreement agreed to be sentenced by the trial judge. By entering into this agreement he waived his right to have a jury determine his sentence.

For the reasons stated above, we cannot conclude that the petitioner's due process rights were violated due to the lack of aggravating factors in his indictment. Therefore, this issue is without merit.

-18-

## Post-Conviction Proceedings Issues - Trial Counsel

The petitioner argues several issues concerning the post-conviction proceedings. He argues that the trial court erred in refusing to allow post-conviction counsel: (1) to review trial counsel's time records in connection with the work he performed in the petitioner's case; (2) the opportunity to review trial counsel's disciplinary records from the Tennessee Board of Professional Responsibility; and (3) to depose and discover trial counsel in connection with his work on behalf of the petitioner.

In a post-conviction case, discovery is governed by Tennessee Code Annotated section 40-30-209(b) and Supreme Court Rule 28, section 6(B)(3)(c) and section 6(C)(7). The statute provides that in a post-conviction proceeding discovery is only available pursuant to Tennessee Rule of Criminal Procedure 16. The first of the court rules, just mentioned, directs the trial court upon a finding that the post-conviction petition contains a colorable claim to order, inter alia, disclosure by the State "of all that is required to be disclosed under Rule 16 of the Tennessee Rules of Criminal Procedure, to the extent relevant to the grounds alleged in the petition, and any other disclosure required by the state or federal constitution." Rule 28, section 6(C)(7) directs the State to comply with the court's order to permit discovery under Rule 16 of the Tennessee Rules of Criminal Procedure.

Rule 16 of the Tennessee Rules of Criminal Procedure does not address depositions. Depositions are addressed in Rule 15 of the Tennessee Rules of Criminal Procedure. Because depositions are not included in the rule referenced in Tennessee Code Annotated section 40-30-209(b), we can only conclude that depositions are not allowed as discovery for post-conviction proceedings. Even if they were allowed for post-conviction proceedings, it would not have been necessary in this case because trial counsel was present at the post-conviction proceeding and was examined by the petitioner's post-conviction counsel.

The only possibly relevant portion of Rule 16 is found at Rule 16 (a)(1)(C). Rule 16(a)(1)(A) addresses statements made by the defendant and Rule 16(a)(1)(B) addresses the defendant's prior record. The relevant portion of Rule 16 reads as follows:
   (a) Disclosure of Evidence by the State
   (1) Information Subject to Disclosure
           (A) Statement of Defendant. . . .
           (B) Defendant's Prior Record. . . .
           (C) Documents and Tangible Objects. Upon request of the defendant, the
   State shall permit the defendant to inspect and copy or photograph books, papers,
   documents, photographs, tangible objects, buildings or places, or copies or portions
   thereof, which are within the possession, custody or control of the State, and which
   are material to the preparation of the defendant's defense or are intended for use by
   the State as evidence in chief at the trial, or were obtained from or belong to the
   defendant.

Tenn. R. Crim. Pro. 16(a)(1) (emphasis added).

Clearly, the trial counsel's time records are not in the control and custody of the State, nor were they to be used in the State's case. Therefore, this information is not discoverable under Rule 16. As for trial counsel's disciplinary records, they were not in the possession of the district attorney, but they could be considered to be in the possession of the State because the Board of Professional Responsibility is established by Rule 9 of the Rules of the Supreme Court of Tennessee.

The more important question is whether trial counsel's disciplinary records should be considered relevant under Rule 16. In State v. Thomas Dee Huskey, No. E1999-00438-CCA-R3-CD, 2002 WL 1400059 (Tenn. Crim. App. at Knoxville, June 28, 2002), this Court interpreted the meaning of "material" in Rule 16 of the Tennessee Rules of Criminal Procedure. In Thomas Dee Huskey, the defendant urged the Court to interpret the term "material" relying on Rule 26.02(1) of the Tennessee Rules of Civil Procedure. Thomas Dee Huskey, 2002 WL 1400059 at * 59. Our Court instead chose to turn to Rule 16(a) of the Federal Rules of Criminal Procedure. We stated:

> In determining the proper standard, we believe that it is appropriate to refer to federal authority interpreting Rule 16(a), Fed. R. Crim. P., because our Rule 16 conforms with and was greatly derived from its federal counterpart. See State v. Hicks, 618 S.W.2d 510, 514 (Tenn. Crim. App. 1981). "'Materiality means more than that the evidence in question bears some abstract logical relationship to the issues in the case . . . . There must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor.'" United States v. Buckley, 586 F.2d 498, 506 (5th Cir. 1978) (quoting United States v. Ross, 511 F.2d 757, 762-63 (5th Cir. 1975)) . . . . This court has previously defined the phrase "material to the preparation of the defendant's defense" using this definition: a tangible object under Rule 16(a)(1)(C) is material "'if there is an strong indication that [the evidence] will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony or assisting impeachment and rebuttal.'" State v. Hershel Clark, No. 02C01-9112-CR-00273, Shelby County, slip. op. at 12 (Tenn. Crim. App. June 2, 1993) . . . .

Thomas Dee Huskey, 2002 WL 1400059 at * 59-60. We fail to see how trial counsel's disciplinary records would significantly alter the proof in his favor. If trial counsel did have some unfavorable reports in his record, their existence would not prove that he acted ineffectively in the petitioner's case. Because trial counsel's disciplinary records do not meet the requirement of materiality under Rule 16, the trial court did not err when it disallowed this discovery in the post-conviction proceeding. In addition to being immaterial, an attorney's disciplinary records are confidential under Rule 9, Section 25 of the Rules of the Supreme Court of the State of Tennessee.

Therefore, these issues are without merit.

**Post-Conviction Proceedings Issues -Witness**

The petitioner also argues that the trial court erred at the post-conviction proceeding when it denied the petitioner's motion for funds to retain an expert criminal defense witness to testify on the petitioner's behalf. Under Rule 28 of the Rules of the Supreme Court, which addresses Post-conviction procedure, "[U]pon motion, in capital cases involving indigent petitioners, the court may authorize expenditure of funds for experts, investigation, or similar services." Tenn. Sup. Ct. R. 28, § 6(B)(8). "The State is not required to provide expert assistance to indigent non-capital post-conviction petitioners." Davis v. State, 912 S.W.2d 689, 696-97 (Tenn. 1995).

The petitioner argues that even though the petitioner was not eligible for the death penalty, this appeal should be considered a capital case because his co-defendants were. He argues the judiciary system has created a situation where the petitioner's case is a capital case, because the trial court and this Court did not allow for a severance.

We disagree with the petitioner's assessment. The petitioner's case does not fall within the definition of a capital case because the petitioner, as a juvenile offender, was not eligible for the death penalty and he pleaded guilty and was sentenced to life without parole, as were his death eligible co-defendants. There is no interpretation that could make his case a capital case when neither he nor his co-defendants received the death penalty.

Therefore, this issue is without merit.

**Other Issues**

The petitioner also presents several other issues: (1) the trial court erred in refusing to allow Professor Daniel Foley to testify concerning his work in extrapolating data from Felony Judgments in Tennessee so that Post-Conviction Counsel could attempt to prove that the trial judge was not the ideal jurist to hear sentencing, in lieu of a jury; (2) the petitioner was denied Due Process of Law in view of the fact that the Greene County Juvenile Court was presided over by a non-lawyer judge; (3) the hearing officer in the Juvenile Court was improperly designated "Judge" in contravention of Rule 24 of the Tennessee Rules of Juvenile Procedure; (4) the Court of Criminal Appeals violated the petitioner's right to a fair appellate tribunal by refusing to reverse the trial court's order, which overruled the petitioner's Motion to Sever; (5) the Court of Criminal Appeals violated the petitioner's right to a thorough review of sentencing as reflected by the brevity of the petitioner's portion of the opinion; and (6) the Tennessee Supreme Court denied the petitioner his rights in refusing to accept review of the Tennessee Court of Criminal Appeals' judgment.

Issues that are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived by this Court. Tenn. Ct. Crim. App. R. 10.

In a post-conviction proceeding, "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of

competent jurisdiction in which the ground could have been presented unless" the claim is based upon a newly recognized constitutional right with retroactive application or the ground was not presented as the result of state action in violation of the federal or state constitution. Tenn. Code Ann. § 40-30-206(g); see State v. Benson, 973 S.W.2d 202, 208 (Tenn. Crim. App. 1998).

### Expert Witness

The petitioner argues that he should have been allowed to present the testimony of Professor Daniel Foley concerning his research which would show that the trial judge was the least lenient sentencing judge in Tennessee. Post-conviction counsel wanted to use this information to show that trial counsel was ineffective in allowing the petitioner to waive jury sentencing.

The petitioner's brief merely states what Professor Foley's report states, that the trial judge appears to be Tennessee's toughest sentencing judge. There is no argument as to why the trial court erred in disallowing this evidence at the post-conviction hearing. There is also no authority to support the petitioner's position that this testimony should have been allowed in the post-conviction hearing. The petitioner asks us "to review Professor Foley's work to determine whether he should have been allowed to testify." Because there is no argument or authority to support this issue, we find that this issue is waived.

Even if this issue was not waived, the petitioner would still be unsuccessful on it. It is in the trial court's discretion to determine the admissibility of expert testimony. State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993). We see no abuse of this discretion by the trial court.

Also, the petitioner states that he intended to use this information to prove that trial counsel was ineffective in allowing the petitioner to be sentenced by the trial court instead of a jury. The issue of trial counsel allowing the petitioner to waive jury sentencing was addressed above. We found that trial counsel did not offer ineffective assistance of counsel in this regard. We also stated that it was required under the petitioner's guilty plea that he be sentenced by the trial court. The petitioner had the choice to plead guilty and be sentenced by the trial court or to go to trial.

Based on the above, we conclude that this issue is without merit.

### Juvenile Proceeding Issues

The petitioner also argues that his due process rights were violated in the juvenile proceedings because the juvenile court was presided over by a non-lawyer judge and the hearing officer was improperly designated "Judge." In a post-conviction proceeding, "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless" the claim is based upon a newly recognized constitutional right with retroactive

application or the ground was not presented as the result of state action in violation of the federal or state constitution. Tenn. Code Ann. § 40-30-206(g); see State v. Benson, 973 S.W.2d 202, 208 (Tenn. Crim. App. 1998).

This issue does not fall within these parameters. Therefore, it is waived.


### Court of Criminal Appeals and Supreme Court Actions

The petitioner argues that this Court and the Tennessee Supreme Court violated the petitioner's due process rights at various points in his case history. First, the petitioner argues that trial counsel failed to argue that any plea negotiations would be "tainted" because the juvenile defendants were ineligible for the death penalty. The petitioner argues that trial counsel should have brought this up in his Rule 10 Appeal. He then states, "Is the fault to be assessed against the attorney for not recognizing that the joinder would skew plea negotiations, or with this Court for not recognizing these probabilities, and raising them sua sponte? Or with the Supreme Court for failing to forecast the result, which was certain to pass without the severance?"

He then goes on to argue that this Court violated the petitioner's right to a thorough review of sentencing as reflected by the brevity of this section in this Court's opinion on direct appeal. He "urges this Court to engage in brutal self-assessment and to declare its own appellate yield to be substandard. The flaw of the opinion lies, not so much in what was said, but, rather, in what was left unsaid."

We conclude that both of these issues are waived. The petitioner has not cited any authority to support either of these ideas. He has not cited one authority to support his argument that this Court has violated his rights due to its alleged lack of review.

The petitioner also argues that the supreme court violated "his rights" by refusing to accept review of this Court's judgment. The petitioner has not cited any authority to support this argument. He has not included any authority to support his argument that the supreme court can violate an individual's rights by refusing to accept review of a decision of this Court. We conclude that this issue is also waived.

For the above reasons, we conclude that the issues regarding the violation of the petitioner's rights by the Tennessee Court of Criminal Appeals and the Tennessee Supreme Court are without merit.

## Cumulative Error

The petitioner's final issue is that due to the individual deprivations of due process experienced by the petitioner through the agencies of ineffective assistance of counsel, the Juvenile Court's failures, forensic psychiatric and psychological failures, the trial court's refusal to sever the juveniles, improper allocution, ineffective interlocutory appeals, and appeals from sentencing, and the minimal treatment of the case in the appellate courts, created a mammoth failure on the part of the Tennessee Judicial Branch.

We have addressed all the petitioner's issues in the above opinion. We have concluded that there was no error in the majority of his complaints. Therefore, we find this issue to be without merit.

## Conclusion

For the above reasons, we affirm the decision of the trial court to deny the petition for post-conviction relief.


_____
JERRY L. SMITH, JUDGE